UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

G.S. 2,

                   Petitioner,

    v.

LAURA HERMOSILLO, *et al.*,

                   Respondents.

Case No. C25-2705-MLP

ORDER GRANTING HABEAS
PETITION

## I.      INTRODUCTION

This matter is before the Court on the petition for a writ of habeas corpus filed, through counsel, by Petitioner G.S. 2. (Dkt. # 1.) Petitioner seeks an order directing his immediate release from immigration custody and prohibiting Respondents from redetaining him in the future absent a hearing before a neutral decisionmaker. (*Id.* at 13-14.) The Court has considered the petition, the briefing submitted by both sides, and the remainder of the record. For the reasons set forth below, the Court GRANTS the petition.[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 6.)

ORDER GRANTING HABEAS PETITION - 1

## II.    BACKGROUND

Petitioner is a native and citizen of India who entered the United States without inspection or parole on or about January 22, 2022, at or near San Luis, Arizona. (Melendez Decl. (dkt. # 9), ¶¶ 3-4.) On January 24, 2022, he was served with a Notice to Appear ("NTA") charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i). (Melendez Decl., ¶ 5; Wong Decl. (dkt. # 10), Exs. 1-2 (NTA, Form I-213).) The NTA set an initial hearing for May 3, 2022, in the Sacramento Immigration Court. (Melendez Decl., ¶ 5.)

On January 25, 2022, Petitioner was approved for the Alternatives to Detention ("ATD") program, instructed to report to the Sacramento ATD unit on February 9, 2022, and released by U.S. Customs and Border Protection ("CBP") on an Order of Recognizance ("OREC"). (Melendez Decl., ¶ 6; Wong Decl., Exs. 3-4 (OREC, ATD Enrollment).)

On February 9, 2022, the NTA was filed with the Executive Office for Immigration Review ("EOIR"), and the Sacramento Immigration Court cancelled the May 3, 2022 hearing and advised that a new date would be set. (Melendez Decl., ¶ 7.) That same day, Petitioner reported in person to the Office of Enforcement and Removal Operations ("ERO") in Sacramento, confirmed his address and telephone number, was terminated from ATD, and was directed to report again on February 6, 2023. (*Id.*) On May 10, 2022, Petitioner filed a Form I-589 application for asylum with the Sacramento Immigration Court. (Dkt. # 1 at 7.)

On February 10, 2023, Petitioner again reported in person to the Sacramento ERO office and confirmed that his contact information remained unchanged. (Melendez Decl., ¶ 8.) Because the immigration court still had not set a hearing date, ERO scheduled his next in-person report for February 14, 2024. (*Id.*) Petitioner did not appear on that date. (*Id.*, ¶ 9.)

On September 22, 2025, Petitioner reported in person to Sacramento ERO. (Melendez Decl., ¶ 9.) At that visit, he could not confirm his address, and ERO responded by re-enrolling him in ATD and referring him for GPS monitoring. (*Id.*)

On October 14, 2025, Petitioner filed an updated Form I-589 application for asylum and related relief with EOIR. (Melendez Decl., ¶ 10.) On November 10, 2025, the Sacramento Immigration Court issued an initial scheduling order setting filing deadlines. (*Id.*, ¶ 11.) On December 9, 2025, Petitioner submitted an EOIR Form 33 change of address listing a residence in Kent, Washington. (*Id.*, ¶ 12.)

On December 10, 2025, Petitioner requested an ATD transfer to Kent and was instructed to report in person to Seattle ERO on December 16, 2025. (Melendez Decl., ¶ 13.) On December 11, 2025, he filed written pleadings with EOIR admitting the factual allegations in the NTA and conceding removability as charged. (*Id.*, ¶ 14.)

On December 16, 2025, Petitioner reported in person to the Seattle ERO office as directed. (Melendez Decl., ¶ 15.) At that visit, ERO revoked his OREC, terminated him from ATD, and took him into U.S. Immigration and Customs Enforcement ("ICE") custody without any prior written notice explaining the basis for revocation and without any opportunity to contest his redetention before a neutral decisionmaker. (*Id.*) Petitioner was transferred to the Northwest ICE Processing Center in Tacoma, Washington. (*Id.*, ¶¶ 15-16.) He was scheduled to appear before an Immigration Judge for a master calendar hearing on January 21, 2026. (*Id.*, ¶¶ 17-18.)

### III.    LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v.*

1   *Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody

2   in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The

3   petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384

4   F.3d 628, 638 (9th Cir. 2004).

## IV.    DISCUSSION

6   Petitioner contends that his December 16, 2025 redetention violates the Due Process

7   Clause because ICE revoked his release and took him into custody without notice or a hearing.

8   (Dkt. ## 1 at 8-11; 11 at 3-8.) Respondents argue that his detention complies with substantive

9   and procedural due process, that ICE followed its regulations, and that the detention is authorized

10   under 8 U.S.C. § 1225(b).[2] (Dkt. # 8 at 5-8.)

11   Due process protections extend to all individuals within U.S. borders, including

12   noncitizens, regardless of their immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due

13   process demands meaningful notice and a genuine opportunity to be heard before the

14   government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

15   Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases,

16   weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing

17   procedures and the value of additional safeguards; and (3) the government's countervailing

18   interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189,

19   1206-07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash.

20   2025) (collecting cases).

---

[2] "To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and
end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of
Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the
process by which Petitioner was detained." *P.T. v. Hermosillo*, 2025 WL 3294988, at *2 n. 1 (W.D.
Wash. Nov. 26, 2025).

Here, all three *Mathews* factors weigh in Petitioner's favor. First, Petitioner's interest in remaining free from physical confinement is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). For nearly three years, he lived in the community under an order of recognizance and ATD supervision, repeatedly reported to ERO as directed, maintained a stable presence, and pursued his asylum claim in the very forum to which DHS directed him. (Melendez Decl., ¶¶ 7-15.) His sudden arrest at a routine check-in and transfer to detention, despite this history of compliance and an absence of criminal record, constitutes a significant deprivation of that fundamental liberty interest. *See*, *e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

Second, the complete absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation. ICE revoked Petitioner's OREC, terminated his ATD participation, and took him into custody at his December 16, 2025 Seattle check-in without any advance written notice, without identifying any new facts showing flight risk or danger, and without affording him an opportunity to contest redetention before a neutral decisionmaker. (Melendez Decl., ¶ 15.) This unilateral, on-the-spot process maximized the potential for an unjustified loss of liberty. That the government may believe it has valid enforcement reasons does not relieve it of the obligation to act through procedures that comport with due process. *See*, *e.g.*, *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1037-38 (N.D. Cal. 2025).

Finally, the government has identified no concrete countervailing interest that would justify dispensing with a pre-deprivation hearing. Petitioner has no criminal history, repeatedly appeared for scheduled check-ins, corrected his address with EOIR, and continued to litigate his asylum application. (Melendez Decl., ¶¶ 7-15.) On this record, generic assertions of flight or public safety risk are refuted by his actual history of compliance. The government's interest in

redetaining a previously released, noncriminal, compliant noncitizen without any prior hearing is therefore low. *See*, *e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Accordingly, Petitioner's redetention without a pre deprivation hearing violates due process. Immediate release is thus the appropriate and constitutionally mandated remedy. This conclusion aligns with a broad consensus among district courts nationwide. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d 1316; *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025). Respondents' perfunctory assertion that they disagree with those decisions (dkt. # 8 at 6-7) provides no basis to depart from this well-established line of authority.

## V.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)    The petition for writ of habeas corpus is GRANTED (dkt. # 1);

(2)    Respondents shall immediately release Petitioner from immigration custody, subject to appropriate conditions of supervision consistent with existing statutory and regulatory authority;

(3)    Within **two (2) business days**, Respondents shall file a notice with the Court confirming his release;

(4)    Respondents are prohibited from redetaining Petitioner until after an immigration court hearing is held (with adequate notice) to determine whether detention is appropriate.

Dated this <u>28th</u> day of January, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge